UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JIA DI FENG,

    Plaintiff,

    v.

SEE-LEE LIM

    and

ALLSTATE INSURANCE COMPANY,

    Defendants.

Civil Action No. 10-1155 (JEB)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jia Di Feng alleges that he paid Defendant See-Lee Lim, who worked as an Allstate Insurance Company agent, $10,000 to help him obtain a green card. Lim took the money, but did nothing to assist him with his immigration status. Unable to recover his money, Plaintiff filed suit against Lim and Allstate in D.C. Superior Court on June 8, 2010, alleging claims of fraudulent misrepresentation, breach of contract, negligent training and supervision, gross negligence, unlawful trade practices, and a violation of the D.C. Consumer Protection Procedures Act. In July 2010, Allstate removed this case to federal court and filed a Motion to Dismiss. Lim separately moved to dismiss. Now before the Court are Defendants' Motions to Dismiss for lack of personal jurisdiction and failure to state a claim.[1]

---

[1] The Court has reviewed Defendants' Motions, Plaintiff's Oppositions, and Defendant Allstate's Reply.

**I.	Background**

Plaintiff is a D.C. resident and an immigrant to the United States. Compl. at ¶¶ 1, 22. He is also an Allstate client who has, since about 2005, purchased a variety of insurance policies from his Allstate agent and one-time friend, Defendant Lim. Id. at ¶¶ 4-5. Plaintiff alleges that on June 18, 2007, Lim approached him with a proposal – in exchange for $30,000, she would help Plaintiff become a legal resident of the United States. Id. at ¶¶ 6, 8. Plaintiff met with Lim and a man he was told was an attorney. Id. at ¶ 10. Plaintiff alleges that he was told this attorney knew someone in the Baltimore Immigration Office who could expedite Plaintiff's immigration matter. Id. Plaintiff further alleges that Lim requested a $10,000 down payment, which she promised to return to him if she could not successfully help him obtain a green card. Id. at ¶¶ 8, 11. Plaintiff states that he paid Lim $5,200 in cash and $4,800 by check in exchange for her assistance. Id. at ¶ 9.

Plaintiff complains that Lim intentionally misled him about what she could and would do to help him. Id. at ¶ 20. First, Plaintiff alleges that the attorney he was told would be assisting him with his immigration matter had in fact been disbarred. Id. at ¶¶ 15, 20. Next, Plaintiff alleges that Lim misrepresented her abilities to help Plaintiff with his immigration status when she was in fact neither an attorney nor "an accredited representative [of] the INS." Id. at ¶¶ 15, 18. Finally, Plaintiff alleges that Lim took his money but never did anything to help him, and now she refuses to refund him his money. Id. at ¶¶ 12, 17.

Plaintiff states that he trusted Lim to help him in part because of their friendship, but also because she is a licensed insurance agent. Id. at ¶¶ 11, 19. Moreover, Plaintiff alleges that he trusted the name "Allstate" – the company that Plaintiff alleges is Lim's employer. Id. at ¶¶ 3,

34. Lim's actions, Plaintiff claims, represent a failure of Allstate to properly train and supervise its agents. Id. at ¶¶ 27-28.

Plaintiff pleads each of five counts against both Lim and Allstate – fraudulent misrepresentation, breach of contract, negligence (negligent training and supervision against Allstate and gross negligence against Lim), and two counts of unlawful trade practices in violation of the D.C. Consumer Protections Procedures Act – and requests more than $1,010,000 in damages. Defendant Lim filed her answer in D.C. Superior Court on June 29, 2010.

On July 8, 2010, Allstate removed this case to federal court. Plaintiff is a citizen of D.C.; Lim is a citizen of Virginia; and Allstate, an Illinois Corporation with its principal place of business in Northbrook, Illinois, is a citizen of Illinois. This Court therefore has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

Each Defendant has now filed a Motion to Dismiss in this Court. Lim moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. Allstate also moves to dismiss under Rule 12(b)(6).

**II.    Legal Standard**

   A. Rule 12(b)(2) – Personal Jurisdiction

To survive a motion to dismiss under Rule 12(b)(2), Plaintiff bears the burden of "establishing a factual basis for the [Court's] exercise of personal jurisdiction over the defendant." Crane v. New York Zoological Society, 894 F.2d 454, 456 (D.C. Cir. 1990) (citing Reuber v. United States, 750 F.2d 1039, 1052 (D.C. Cir. 1984), overruled on other grounds by Kauffman v. Anglo-American School of Sofia, 28 F.3d 1223 (D.C. Cir. 1994)). To meet this burden, Plaintiff "must allege specific facts connecting the defendant with the forum." Capital

Bank Int'l Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72, 74 (D.D.C. 2003) (citing Second Amendment Foundation v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001)).

In determining whether a basis for personal jurisdiction exists, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." New York Zoological Society, 894 F.2d at 456 (citing Reuber, 750 F.2d at 1052). Unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

B. Rule 12(b)(6) – Failure to State a Claim

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted). The notice pleading rules are "not meant to impose a great burden upon a plaintiff." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005). But while "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). The Court need not accept as true, however, "'a legal conclusion couched as a factual allegation,'" nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain,

478 U.S. 265, 286 (1986)). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

**III.  Analysis**

The Court will first address the issue of personal jurisdiction and then analyze each count as it relates to each Defendant.

A. Jurisdiction

Where, as here, subject matter jurisdiction "is based on diversity of citizenship, [courts in this district] look to District law to determine whether there is a basis for exercising personal jurisdiction over" the defendant. New York Zoological Society, 894 F.2d at 455 (citing Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987)). Under the District of Columbia's long-arm statute, "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's – (1) transacting any business in the District of Columbia . . . ." D.C. CODE § 13-423(a)(1).

Defendant Lim raises the defense of lack of personal jurisdiction both in her Answer and in her Motion to Dismiss. She argues, "This Court lacks Jurisdiction because none of the event[s] occurred in the District of Columbia if they occurred at all." Lim Answer at ¶ 2. In her Motion to Dismiss, Lim alleges, "All the events described in the Plaintiff's complaint occurred on June 18, 2008 in Silver Spring, Maryland." Lim Mot. at 3. Specifically, Lim alleges she "travelled to Silver Spring, Maryland at the Lees express carryout restaurant to pick up a check

5

from Mr. Feng $4,800.00 and cash $200.00" as reimbursement for money she lent Plaintiff earlier that day.  Id. at 4.

Plaintiff conversely alleges that he paid Lim in the District of Columbia.  Specifically, Plaintiff states in his Opposition to Lim's Motion to Dismiss that he "rendered the check of $4,800.00 and $5,000.00 cash payment to Ms. Lim in the District of Columbia.  The check was under Plaintiff's name and his address is in the District of Columbia."  Plf. Opp. to Lim Mot. at 6.  To survive a motion to dismiss, Plaintiff need only make a *prima facie* showing that the Court has jurisdiction over Defendant.  See Mwani v. Bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005).  In making such a showing, Plaintiff is "not limited to evidence that meets the standards of admissibility required by the district court.  Rather, [he] may rest [his] argument on [his] pleadings, bolstered by such affidavits and other written materials as [he] can otherwise obtain." Id.; see also U.S. v. Smithfield Foods, Inc., 332 F. Supp. 2d 55, 59-60 (D.D.C. 2004) ("in resolving motions to dismiss brought under Rule 12(b)(2), . . . courts are free to consider relevant materials outside the pleadings.") (citation omitted).

The factual allegations contained in Plaintiff's Opposition to Lim's Motion to Dismiss do not carry the same weight as would an affidavit from Plaintiff; nevertheless, the Court finds them, at this stage of the proceedings, sufficient to support the conclusion that Lim transacted business in the District of Columbia and is thereby subject to the District's long-arm statute. Although the Court preliminarily resolves the discrepancy about the location of events in favor of Plaintiff, this decision may be revisited in the event that discovery reveals that the parties did not conduct any of their business in the District of Columbia.

Even if the events described in Plaintiff's Complaint transpired in Maryland rather than the District, this Court may nevertheless have personal jurisdiction over Lim.  District of

Columbia courts may assert personal jurisdiction over a person who "caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. CODE § 13-423(a)(4). Lim admits in her Motion to Dismiss that her "business [is] 98% conducted in Virginia and Maryland and other jurisdictions," Lim Mot. at 6, suggesting that she may regularly conduct business, if a minority of her overall practice, in the District.

B. Count I: Fraudulent Misrepresentation

To successfully plead a claim of fraudulent misrepresentation under D.C. law,[2] a plaintiff must establish, by clear and convincing evidence: (1) a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive; and (5) an action taken in reliance upon the representation. See Fennell v. AARP, No. 09-01976, 2011 WL 899334, at *10 (D.D.C., Mar. 16, 2011) (citing In re Estate of McKenney, 953 A.2d 336, 342 (D.C. 2008)); Nader v. Allegheny Airlines, Inc., 626 F.2d 1031, 1036 (D.C. Cir. 1980). Under Federal Rule of Evidence 9(b), a plaintiff must also "state with particularity the circumstances constituting fraud." To fulfill this requirement, Plaintiff "'must state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud.'" Kowal v. MCI Communications Corp., 16 F.3d

---

[2] Because Plaintiff is a D.C. resident, see Compl. at ¶ 1, and because he alleges that he "rendered the check of $4,800.00 and $5,000.00 cash payment to Ms. Lim in the District of Columbia[, and t]he check was under Plaintiff's name and his address [is] in the District of Columbia," Plf. Opp. to Lim Mot. at 6, the Court will apply D.C. law at this stage. To the extent it is revealed during the course of discovery that it is appropriate to apply the law of a different jurisdiction, such as Maryland or Virginia, the parties are free to raise the issue.

7

1271, 1278 (D.C. Cir. 1994) (quoting United States v. Cannon, 642 F.2d 1373, 1385 (D.C. Cir. 1981).

   *1. See-Lee Lim*

Defendant Lim argues in her Motion to Dismiss that "Plaintiff's fraudulent misrepresentation claim fails because he does not plead any of the elements necessary for a claim of fraud . . . ." Lim Mot. at 3. Lim does not elaborate, perhaps because there is little to argue on this issue. It is clear that Plaintiff has sufficiently pled this claim.

Plaintiff alleges that on June 18, 2007, Lim made several representations regarding material facts that turned out to be false. Plaintiff pleads that Lim "presented herself to practice immigration matter [*sic*]" and "represent[ed] that she [could] obtain [] legal status for Mr. Feng." Compl. at ¶¶ 31, 18. Plaintiff's pleadings suggest that Lim made statements to the effect that her friend was an attorney, and that he "knew someone in the Baltimore Immigration office and could expedite Feng's immigration matter." Id. at ¶ 10. Plaintiff further alleges that Lim "promised to return full refunds to Mr. Feng if she could not obtain 'legal status' for Mr. Feng." Id. at ¶ 8. Plaintiff also alleges that Lim acted with the requisite intent to deceive: "She intentionally misled the Plaintiff when she took the money from Plaintiff." Id. at ¶ 20. Finally, Plaintiff adequately alleges that he acted in reliance on Lim's misrepresentations and suffered damages as a result. Id. at ¶¶ 11, 17.

These allegations clear the pleadings bar. See Barnstead Broadcasting Corp. v. Offshore Broadcasting Corp., 886 F. Supp. 874, 883 (D.D.C. 1995) ("an allegation that a party falsely stated existing intentions is sufficient to state a claim" for fraudulent misrepresentation); In re National Student Marketing Litigation, 413 F. Supp. 1156, 1158 (D.D.C. 1976) (Rule 9(b) "requires only general averments concerning the defendant's knowledge or intent."). The count may therefore proceed.

*2. Allstate*

Plaintiff's fraudulent misrepresentation claim against Allstate, however, is another matter. Allstate correctly notes in its Motion to Dismiss that Plaintiff's Complaint "is devoid of any allegations regarding any alleged fraudulent misrepresentation by Allstate"; in fact, Plaintiff "does not allege that Allstate made any representations" whatsoever relevant to this case. Allstate Mot. at 5. In light of this, the Court infers that any fraudulent misrepresentation claim Plaintiff intends to assert against Allstate must be based on a theory of vicarious liability.

The doctrine of *respondeat superior* "makes an employer liable for those torts of his employees committed within the scope of their employment." Jordan v. Medley, 711 F.2d 211, 213 (D.C. Cir. 1983); see also RESTATEMENT (THIRD) OF AGENCY § 2.04 ("An employer is subject to liability for torts committed by employees while acting within the scope of their employment."). The D.C. Circuit has observed that D.C. courts "apply the scope-of-employment test very expansively, in part because doing so usually allows an injured tort plaintiff a chance to recover from a deep-pocket employer rather than a judgment-proof employee." Harbury v. Hayden, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008) (citing RESTATEMENT (THIRD) OF AGENCY § 2.04 cmt. b (2006) ("Respondeat superior . . . reflects the likelihood that an employer will be more likely to satisfy a judgment.")). As a result, application of the "scope-of-employment test often is akin to asking whether the defendant merely was on duty or on the job when committing the alleged tort." Id.

As an initial matter, the parties vigorously dispute whether Defendant Lim is an employee of Allstate. Plaintiff alleges in his Complaint, "Upon information and belief, Allstate insurance hires their agents and there is employer-employee relationship between Allstate and See-Lee Lim." Compl. at ¶ 3. Allstate argues that Lim's employment status is a legal question, Allstate Reply at 3, and cites a litany of cases, none of them from this Circuit, for the proposition

that "numerous courts and federal agencies have confirmed that Allstate agents, like Lim, are independent contractors." Allstate Mot. at 7.

Yet the Court need not decide the issue here because Plaintiff fails to allege any facts to suggest that, even if Lim were an Allstate employee, she was acting within the scope of this employment at the time she offered to help Plaintiff with his immigration status. Indeed, as Allstate argues, "Plaintiff does not allege . . . that Allstate is in the business of providing assistance in immigration matters" or that Lim's offer of assistance with Plaintiff's immigration issues was in any way connected to her duties as an insurance agent. Allstate Reply at 4. The fact that Lim was, for some purposes, an Allstate agent does not convert her into one for all of her actions. Since Plaintiff fails to plead facts sufficient to support a claim against Allstate of *respondeat superior* liability for Defendant Lim's allegedly fraudulent misrepresentations, the Court will dismiss this count against Allstate.

C. Count II: Breach of Contract

To adequately plead a breach of contract claim, a plaintiff must allege facts showing: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. See Miniter v. Sun Myung Moon, 736 F. Supp. 2d 41, 49 (D.D.C. 2010); Mesumbe v. Howard Univ., 706 F. Supp. 2d 86, 94 (D.D.C. 2010); Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009). Both Defendants argue that Plaintiff has failed to allege facts sufficient to support a claim for breach of contract.

   1.   *See-Lee Lim*

On this subject, Defendant Lim merely asserts, "Plaintiff's breach of contract claim likewise fails because Plaintiff has not pleaded any facts showing that a contractual duty existed or that Allstate or the Defendant Lim breached a contractual duty." Lim Mot. at 3.

The Court disagrees and finds that Plaintiff has adequately pled facts sufficient to survive a motion to dismiss. Plaintiff alleges that "[o]n June 18, 2007, Ms. Lim solicited [] immigration business from Mr. Feng for the total price of $30,000.00" and "demanded and received [a] down payment of $10,000" from Plaintiff. Compl. at ¶¶ 6-7. Plaintiff further alleges that he "entrusted Defendant Lim with $10,000.00 . . . to obtain [a] 'green card.'" Id. at ¶ 11. Additionally, Plaintiff alleges that "Ms. Lim wrote a Chinese receipt to Mr. Feng" in which she "promised to return full refunds to Mr. Feng if she could not obtain 'legal status' for Mr. Feng." Id. at ¶ 8. Plaintiff alleges that he paid Lim $10,000 ($5,200 in cash and $4,800 by check), but that "Defendant Lim has never performed any work." Id. at ¶¶ 9, 11-12. These allegations are clearly sufficient.

### 2. *Allstate*

Allstate moves to dismiss Plaintiff's breach of contract claim on the ground that "Plaintiff does not allege, nor could he, that any contract exists between Plaintiff and Allstate relating to Plaintiff's immigration status." Allstate Mot. at 5. Plaintiff responds that he has adequately alleged the existence of a contract between himself and Lim, and that "[w]hether the contract entered by Ms. Lim is on behalf of Allstate and whether Allstate reaped the benefits of Ms. Lim['s] work product[] should be decided by the records and evidence discovered . . . ." Plf. Opp. to Allstate Mot. at 8.

The question, once again, centers on whether Allstate should be vicariously liable for Lim's alleged breach of contract. As such, Plaintiff's breach of contract claim suffers from the same deficiencies as his fraudulent misrepresentation claim against Allstate. Even assuming that Lim is an Allstate employee, Plaintiff alleges no facts to suggest that she was acting within the scope of her alleged employment at the time she "solicited [] immigration business from Mr. Feng." Compl. at ¶ 6. Plaintiff does not allege that he signed any sort of written document

relating to his immigration issues with Allstate's name on it; rather, the only written documentation Plaintiff alleges exists documenting his contract with Lim is a "Chinese receipt" hand-written by Lim. Id. at ¶ 8.

The closest Plaintiff's allegations get to implicating Allstate in the immigration contract is Plaintiff's statement that "[o]ver the years, Plaintiff has also introduced other friends and family members to Defendant Lim for all other matters. Allstate is the beneficiary of Plaintiff and Defendant Lim's business relationship." Id. at ¶ 16. The fact that Plaintiff may have referred others to Allstate based on his prior experiences with an insurance agent there does not help to prove that Lim was acting within the scope of her alleged employment as an Allstate agent at the time she entered into a contract with Plaintiff to help with immigration, rather than insurance, matters. This count against Allstate will thus be dismissed.

D. Count III: Negligence

Plaintiff appears to assert two separate counts based on theories of negligence: gross negligence against Lim, and negligent training and supervision against Allstate.

1. *See-Lee Lim*

To state a claim for negligence under District of Columbia law, Plaintiff must allege facts sufficient to prove the existence of a duty, breach of that duty, causation, and damages. See Art Metal-U.S.A., Inc. v. U.S., 753 F.2d 1151, 1157 (D.C. Cir. 1985); Powell v. District of Columbia, 634 A.2d 403, 406 (D.C. 1993) (affirming trial court's dismissal of plaintiff's negligence claim for failure to state a claim). The duty required for a negligence claim is the standard of care. See St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc., 573 F. Supp. 2d 152, 175 (D.D.C. 2008). While an ordinary negligence claim can be premised on a simple breach of that standard of care that causes damage to the plaintiff, "gross negligence implies an 'extreme departure from the ordinary standard of care.'" Wager v. Pro, 603 F.2d

12

1005, 1010 (D.C. Cir. 1979) (quoting WILLIAM L. PROSSER, LAW OF TORTS § 8 at 184 (4th ed. 1971)).

Plaintiff does not even respond to Lim's Motion on this count. In fact, Plaintiff's Gross Negligence claim states in its entirety: "Plaintiff incorporated all the above paragraphs. In addition, Plaintiff believes that Defendant Lim acted [with] gross negligence and presented that she could obtain 'legal status' for Plaintiff in 2007." Compl. at ¶ 30. Since Plaintiff pleads neither the existence of a duty nor the particular standard of care owed to him, this claim cannot stand. The only possible duty is that created by the parties' entry into the alleged contract for immigration assistance – the breach of which already forms the basis for Plaintiff's breach of contract claim. A negligence claim based solely on a breach of the duty to fulfill one's obligations under a contract is duplicative and unsustainable. See, e.g., Choharis v. State Farm Fire and Casualty Co., 961 A.2d 1080, 1089 (D.C. 2008) ("[T]he tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship. The tort must stand as a tort even if the contractual relationship did not exist."). Recovery on such a negligence claim is also barred under D.C. law by the economic loss doctrine. See Potomac Plaza Terraces, Inc. v. QSC Products, Inc., 868 F. Supp. 346, 354 (D.D.C. 1994) (adopting economic loss doctrine); see also RLI Ins. Co. v. Pohl, Inc. of America, 468 F. Supp. 2d 91, 94 (D.D.C. 2006) (quoting Furash & Co. v. McClave, 130 F. Supp. 2d 48, 56 (D.D.C. 2001) (finding that "the District of Columbia 'has not authorized tort recovery for purely economic losses in a contract setting.'")).

Count III will thus be dismissed as to Lim.

    *2.    Allstate*

Plaintiff's negligence claim against Allstate is based on a theory of negligent training and supervision. Under D.C. law, an employer must "'use reasonable care to select employees

13

competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee. When an employer neglects this duty and as a result injury is occasioned to a third person, the employer may be liable even though the injury was brought about by the willful act of the employee beyond the scope of employment.'" Pietsch v. McKissack & McKissack, 677 F. Supp. 2d 325, 329 (D.D.C. 2010) (quoting Griffin v. Acacia Life Ins. Co., 925 A.2d 564, 575 (D.C. 2007)). To successfully state a claim for negligent supervision under D.C. law, a Plaintiff must allege facts that show "the employer 'knew or should have known its employee behaved in a dangerous of otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.'" Simms v. District of Columbia, 699 F. Supp. 2d 217, 226 (D.D.C. 2010) (quoting Phelan v. City of Mt. Rainier, 805 A.2d 930, 937-38 (D.C. 2002)). Additionally, "the claim must be predicated on a 'common law cause of action or duties otherwise imposed by common law.'" Pietsch, 677 F. Supp. 2d at 329 (quoting Griffin, 925 A.2d at 576).

In support of his negligent training and supervision claim, Plaintiff pleads that, "[a]t all times, Allstate should provide training and supervision to make sure their agents [] act within the scope of employment," and that "Allstate has not conduct[ed] enough supervision toward[] their agents to assure that they will not act outside the scope of employment." Compl. at ¶¶ 27-28. Under the heading "Respondeat Superior," Plaintiff further alleges that "Allstate Insurance cannot use the 'respondeat superior' to avoid liability because Allstate has benefited and reap[ed] the benefits of Defendant[] Lim's solicitation of business[]. In fact, due to the lack of supervision, Allstate should have and could have audit[ed]/supervise[d] their employees." Id. at ¶ 29.

14

Allstate argues that, "because Allstate was not Lim's employer, Plaintiff's claim of negligent training and supervision fails as a matter of law." Allstate Mot. at 8. Such a position is infirm for two reasons. First, for the purpose of these Motions to Dismiss, the Court will accept as true Plaintiff's factual assertion that Lim was an Allstate employee. See Doe v. Exxon Mobil Corp., 573 F. Supp. 2d 16, 24 (D.D.C. 2008) ("[T]he existence of a master-servant relationship turns on control, which is a question of fact typically left to the jury.") (internal citation omitted)); see also Safeway Stores, Inc. v. Kelly, 448 A.2d 856, 860 (D.C. 1982) ("Determining whether a master and servant relationship exists depends upon the particular facts of each case."). Second, other D.C. courts have indicated the lack of a strict employer-employee relationship is not in all cases a bar to a negligent supervision claim. See Brown v. Argenbright Sec., Inc., 782 A.2d 752, 760 n.11 (D.C. 2001) ("Although Giles [v. Shell Oil Corp., 487 A.2d 610 (D.C. 1985)] and other cases discuss negligent supervision in the context of an employer-employee relationship and frequently use the term 'employee,' it is clear from the Restatement and other authorities that a claim of negligent supervision does not require proof that the supervised person was also an employee or agent."); Carroll v. Fremont Investment & Loan, 636 F. Supp. 2d 41, 54 (D.D.C. 2009) ("To prevail on a negligent supervision claim, the plaintiff need not prove that the party supervised was an employee or agent of the defendant."); but see Simms, 699 F. Supp. 2d at 226 ("Here, there is no alleged 'supervision' in the negligent supervision claim. Masi was not employed by the defendant. Therefore, it is impossible for defendant to have 'failed to adequately supervise the employee.' . . . For that reason, plaintiff's negligent supervision claim must fail.") (quoting Phelan, 805 A.2d at 937). Because, at this point, the Court accepts Plaintiff's allegation that Lim is an employee of Allstate, the Court need not yet reach this second question.

There is, however, another problem with Plaintiff's negligent supervision claim: he has not pled enough facts to establish the elements of the count. Specifically, Plaintiff has not alleged that Allstate "knew or should have known" Lim "behaved in a dangerous or otherwise incompetent manner" or that Allstate, "armed with that actual or constructive knowledge, failed to adequately supervise" Lim. Simms, 699 F. Supp. 2d at 226 (internal citations omitted). Plaintiff's conclusory allegations that Allstate could have and should have more closely supervised Lim are insufficient to state a claim for negligent supervision under D.C. law.

Dismissal of the count, however, seems draconian at this stage of the proceedings, given what may be a remediable omission. As a result, the Court will dismiss Plaintiff's negligent supervision claim without prejudice so that Plaintiff may have the opportunity to amend his Complaint, if he can in good faith do so.

E. Counts IV and V: Unlawful Trade Practices under the CPPA

Counts IV and V appear to be requests for different remedies for the same statutory violation – a claim for the use of unlawful trade practices under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.* ("CPPA").

Section 28-3904 of the CPPA prohibits "unlawful trade practices" and states in relevant part:

> It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
>
> (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
>
> (b) represent that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have;
>
> . . .

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead.

D.C. CODE §§ 28-3904(a)-(b), (e)-(f).

The CPPA provides consumers with a private cause of action to redress a violation of § 28-3904. Section 28-3905(k)(1) provides:

> A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia and may recover or obtain the following remedies:
>
> (A) treble damages . . . ;
>
> (B) reasonable attorney's fees;
>
> (C) punitive damages;
>
> (D) an injunction against the use of the unlawful trade practice;
>
> (E) in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or
>
> (F) any other relief which the court deems proper.

1. *See-Lee Lim*

Lim moves to dismiss Counts IV and V on the ground that "Plaintiff's claim under the CPPA fail[s] because he fails to plead any facts whatsoever showing that Allstate or the Defendant Lim violated any provisions of that statu[t]e." Lim Mot. at 3. While Lim does not elaborate, Allstate raises an argument that is relevant to Lim's Motion – namely, that Plaintiff does not constitute a "consumer" within the meaning of the CPPA. Allstate Mot. at 11. The CPPA defines a "consumer" as "a person who does or would purchase, lease (from), or receive consumer goods or services . . . ." § 28-3901(a)(2). "Goods and services" are defined as "any

17

and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." § 28-3901(a)(7).

In the present case, Plaintiff alleges that he contracted to purchase a service from Lim – *i.e.*, assistance in obtaining a green card. Compl. at ¶ 11. Given the broad definition of "goods and services" contained in § 28-3901(a)(7) and Plaintiff's allegations that he contracted with Lim for a service in exchange for $10,000, the Court finds that Plaintiff has alleged the facts necessary to establish his status as a consumer for the purpose of these Motions to Dismiss.

Plaintiff has also sufficiently alleged the facts necessary to state a claim against Lim for engaging in unlawful trade practices under the CPPA. For example, it is a violation of the CPPA for a person to "represent that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have." § 28-3904(b). Plaintiff alleges that Lim "presented herself to practice immigration matter," Compl. at ¶ 31, and "represent[ed] that she [could] obtain . . . legal status for Mr. Feng," id. at ¶ 18, when, unbeknownst to Plaintiff, "Lim cannot conduct legal business," id. at ¶ 11, "has no legal training," id. at ¶ 18, "is not . . . an attorney," id. at ¶ 15, and "is not an accredited representative [of] the INS." Id. Furthermore, Plaintiff alleges that Lim represented that she had a connection to the Baltimore Immigration Office via her "attorney friend" whom she brought to the meeting with Plaintiff. Id. at ¶¶ 10, 14. In fact, Plaintiff alleges, Lim's friend "turned out to be a disbarred attorney," id. at ¶ 15, and Plaintiff "never met with [him again] after the first meeting." Id. at ¶ 14.

Finally, the damages Plaintiff requests are permissible damages under the CPPA. In Count IV, Plaintiff "demands treble damages, along with reasonable attorney fees, injunction and additional relief as may be necessary . . . ." Id. at ¶ 31. In Count V, Plaintiff demands punitive

damages. Id. at ¶ 32. Each of these types of damages is permitted under § 28-3905(k)(1). This count will thus not be dismissed as to Lim.

        2.    *Allstate*

Allstate also moves to dismiss Counts IV and V on two grounds: 1) the "Complaint contains no allegations that Allstate engaged in improper trade practices," and 2) the "Complaint fails to allege that Plaintiff is a consumer within the meaning of the CPPA." Allstate Mot. at 10-11. Although, as explained above, Plaintiff may be a consumer in relation to Lim within the meaning of the CPPA, it is a separate question whether he is an Allstate consumer. Allstate argues that Plaintiff "alleges in the Complaint that he entered into an agreement with Lim not for an Allstate insurance product, but rather for assistance with an immigration matter. The Complaint contains no allegation that he purchased, leased or received goods or services from Allstate which form the basis of his complaints." Allstate Mot. at 11. Allstate is correct in its position on direct liability.

Plaintiff, however, indicates that his CPPA claims against Allstate are again based on a theory of vicarious liability. He argues that "Allstate, as Ms. Lim's principle [*sic*] and/or employer, is liable for Ms. Lim's unlawful trade practice," and he asserts that, "[w]hether Allstate should be vicariously liable for Ms. Lim, as an exclusive agent and/or an employee for Allstate, depends on the records and evidence discovered in the process . . . ." Plf. Opp. to Allstate Mot. at 9.

Neither party addresses whether a plaintiff may, as a matter of law, successfully plead a CPPA claim based solely on vicarious liability. Even assuming that this were possible, Plaintiff's claim against Allstate under the CPPA cannot survive for the same reason Counts I and II fail to state a claim against Allstate: even if the Court accepts as true that Lim is an Allstate employee, Plaintiff has pled no facts to suggest Lim was acting within the scope of her

19

employment when she allegedly solicited immigration business from Plaintiff and entered into a contract with him to provide him assistance in obtaining a green card. This count thus cannot proceed against Allstate.

**IV.     Conclusion**

The Court, therefore, ORDERS that:

1) Defendant Allstate's Motion is GRANTED IN PART and GRANTED WITHOUT PREJUDICE IN PART;

2) Defendant Lim's Motion is GRANTED IN PART and DENIED IN PART;

3) Counts I, II, IV and V against Allstate are DISMISSED;

4) Count III against Allstate is DISMISSED WITHOUT PREJUDICE;

5) Count III against Lim is DISMISSED; and

6) A status conference at which all parties must appear shall take place on May 19, 2011, at 10:00 am in Courtroom 19.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: May 12, 2011

20